(No. 4545- )

ERVIN WILLIAMS AND INEZ WILLIAMS, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 23, 1954.*

ALBERT SAIKLEY, Attorney for Claimants.

LATHAM CASTLE, Attorney General; THOMAS G. CRONIN, Assistant Attorney General, for Respondent.

FEARER, J.

Ervin Williams and Inez Williams, husband and wife, filed their complaint on March 18, 1953 for personal injuries and property damage to an automobile,

owned and driven by Ervin Williams, as an outgrowth of an accident on September 30, 1952, at or about the hour of 7:30 P.M., on Illinois State Route No. 1, approximately two miles north of the City of Hoopeston, Vermilion County, Illinois.

Respondent's amended answer was filed on August 19, 1953 denying each and every allegation of the complaint of Ervin Williams, and, as an additional defense, alleged that the injuries or damages, which were allegedly caused in whole or in part, or were contributed to by reason of the negligence on the part of claimant, were not caused by any negligence of respondent; or, in the alternative, if there was any negligence, it was that of some third person, firm, or corporation, over whom respondent had no control, or for whom respondent would not be responsible. As to the claim of Inez Williams, no written answer was filed. Therefore, under the rules of this Court, heretofore adopted, and specifically Rule 11, a general traverse or denial of the facts set forth in the complaint shall be considered.

The claimants, in their verified complaint, allege that, at the time and place aforesaid, Ervin Williams was driving his 1950 Studebaker Sedan in a northerly direction upon Illinois State Route No. 1, and that Inez Williams, his wife, was riding as a passenger in said automobile. The highway upon which they were traveling, approximately two miles north of the City of Hoopeston, Vermilion County, Illinois, was a paved highway of a width of approximately sixteen feet. Claimant's automobile was being operated in a northerly direction on the easterly half of said highway at a speed of approximately thirty-five miles per hour, and both of the claimants were in the exercise of due

care and caution for their own safety and the safety of others. It is further alleged that the said highway was under the control of respondent, and that it was the duty of respondent to keep and maintain said highway in a reasonably safe condition for the use of motorists traveling upon it.

The particular acts of negligence of respondent charged in the complaint were the cutting out of a portion of said highway, approximately five to eight feet in length, and two feet deep; and failure to barricade said excavation, and place lighted flares to warn persons traveling upon said highway of the repairs being made thereon. It is further alleged that respondent did not place any signs warning persons traveling upon said highway of the defective condition. The complaint also contains a general allegation of the negligence of respondent in failing to warn persons using said highway of its dangerous condition. As a direct and proximate result thereof, both claimants sustained severe personal injuries, and property damage to the automobile, and each pray for damages in the amount of $7,500.00.

A Departmental Report was offered in evidence, made an exhibit, and, under the rules of this Court, the pertinent portions thereof are considered as evidence offered by respondent. The Departmental Report makes reference to the fact that Illinois Route No. 1 is also designated and known as Federal Aid Route No. 1, and, having this designation, is a part of the system of State Highways, particularly that part of said Route No. 1 between points near the cities of Hoopeston, Vermilion County, and Milford, Iroquois County. It, therefore, is under the jurisdiction of the Department of Public Works and Buildings, Division

of Highways, for all purposes of construction, reconstruction, repairs, maintenance and operation.

On May 16, 1952, the respondent, through the Department of Public Works and Buildings, let a contract for repaving that part of Route No. 1 between points one and one-half miles north and two and three-fourths miles south of the Wellington Road connection in Iroquois County. A letting was also held at the same time for the widening of two slab bridges on said section of Route No. 1. The southern-most bridge is approximately two and one-quarter miles south of the Wellington Road connection. The contracts were awarded to the Orr Construction Company.

As of September 30, 1952, the pavement on Section 17R, referred to in the Departmental Report, had been completed with the exception of the twenty foot approach slabs at the north and south ends of the south bridge on Section 17RB. The openings referred to were 24 feet in length (full width of pavement), 20 feet wide, and approximately 20 inches in depth. The bridge approach slabs had not been poured, and the highway shoulders were not finished. The entire section of the highway referred to from Route U.S. No. 24 to the Vermilion-Iroquois County Line was closed to through or regular traffic. Local property owners were permitted ingress and egress by way of the finished pavement, and regular or through traffic was detoured around the construction projects.

Northbound traffic on Route No. 1 was detoured west on State Route No. 9 to State Route No. 49; thence north on State Route No. 49 to Route U.S. No. 24; thence east on Route U.S. No. 24 to its junction with Route No. 1. Route No. 9 is two miles south of the Vermilion-Iroquois County Line road; two and

three-fourths miles south of the south end of the pavement project, and three and one-quarter miles south of the bridge where the accident occurred.

The reflectorized signs referred to, notifying northbound motorists that Route No. 1 was closed between the Vermilion-Iroquois County line and Route U.S. No. 24 were as follows:

A 42″ by 42″ sign located on the east highway shoulder of Route No. 1, and bearing the message "DETOUR". This sign was 1000 feet south of Route No. 9.

A 15″ by 30″ sign located on the east highway shoulder of Route No. 1, and bearing the symbol of an arrow pointing to the left (west). This sign was 500 feet south of Route No. 9.

A 36″ by 36″ sign located on the east highway shoulder of Route No. 1, and 500 feet south of Route No. 9, bearing the message "ILL. 1 CLOSED NORTH TO U.S. 24—DETOUR." Also, on this sign was an arrow pointing west.

A sign 18″ by 48″ located at the junction of the east highway shoulder of Route No. 1 and the north shoulder of Route No. 9, and bearing the symbol of an arrow pointing west.

A 36″ by 36″ sign located on the east highway shoulder of Route No. 1 with the message "BARRICADE AHEAD". This sign was 600 feet south of the Vermilion-Iroquois County Line Road, and was illuminated by two kerosene torches, which were on the ground immediately in front of the sign.

The Departmental Report shows that in addition to the signs referred to, a barricade was fixed across the entire width of the pavement on Route No. 1 in line with the north right-of-way line of the Vermilion-

Iroquois County Line Road. This barricade was 36''
high, and at its center was attached a 24'' by 30'' sign
with the message "ROAD CLOSED". The barricade
and sign were illuminated by four kerosene torches,
which were placed on the pavement immediately in
front of the barricade.

Another barricade was placed across the entire
width of pavement on Route No. 1 at a point three-
fourths of a mile north of the Vermilion-Iroquois
County Line Road. This barricade was 36'' high, and
at its center was attached a 24'' by 30'' sign with the
message "ROAD CLOSED". The location of this bar-
ricade could also be described as being one-half mile
south of the bridge where the accident in question
occurred.

Similar signs to those described above were in
place to direct east and west bound traffic on Route
No. 9.

In view of the fact that the testimony offered on
behalf of claimants is diametrically opposed to the
testimony offered on behalf of respondent, we be-
lieve that it is advisable to set forth in some detail the
pertinent and competent evidence incorporated in the
Departmental Report made by Earl McK. Guy, En-
gineer of Claims for the Division of Highways.

We are cognizant of the fact that the signs, barri-
cades, and the illumination of signs and barricades as
to re-routing and warning traffic is only material in
considering the conditions just prior thereto, and at
the time of the accident in question. However, it is of
a corroborating nature, when the testimony of certain
witnesses for respondent is considered. It should also
be pointed out at this time that the Departmental
Report of Mr. Guy has not been contradicted by any

testimony, other than that offered by claimants' witnesses in describing what they observed in and around the location where the accident occurred.

The witnesses to whom we refer are Ervin Williams and Inez Williams, his wife, claimants, neither of whom saw any signs, barricades, or other devices whatsoever warning motorists of the repairs being made to said highway and the approach to said bridge. They did describe the hole in the pavement in which their automobile was driven, which caused the injuries and property damage, for which they are seeking to recover. The other witness, testifying to practically the same thing on behalf of claimants, was George Hanover, who was driving some distance behind, following claimants' car. He testified that he saw them drive into the hole, and come to rest on the west side of the pavement, north of the place where there was a break in the pavement. Another witness, testifying to practically the same thing, was George Williams, the garage operator, who went to the scene of the accident the same evening for the purpose of returning the wrecked automobile to Earl Park, Indiana. Also, Roger Paul Williams, brother of Ervin Williams, testified that he went to the scene of the accident on the same evening, arriving there after the garageman, and corroborated the testimony of other witnesses for claimants.

There appears to be no conflict as to authorities cited, and the law applicable in this case. The burden of proof is upon the claimants to prove by a preponderance or greater weight of the evidence, first, that the claimants were not guilty of negligence, which in any way contributed to their own injuries; second, that the respondent was guilty of negligence, and that it was the negligence of the respondent, which was the proxi-

mate cause of claimants' injuries; and, third, the question of damages. Failure to prove any one of the above propositions would defeat claimants' right to recover.

We have not commented on the medical testimony, as there is no question but what both of the claimants received personal injuries and property damage, which are quite extensive, and which are not questioned by the respondent.

We do believe it is necessary to go into some detail as to the testimony of respondent's witnesses in view of the Departmental Report, which was received in evidence in this case. This testimony was also very ably referred to in the Commissioner's Report filed herein; and, furthermore, for the reason that not one of claimants' witnesses observed the barricades, signs, lights, or any warning whatsoever, which seems very strange to us, where construction work was being done as extensively as at the location in question.

We must also bear in mind that the road in question was newly constructed, and had been closed completely to traffic moving in a northerly and southerly direction where the new highway was being constructed, and was open only as a means of ingress and egress to farmers living along said highway; and the only means they had of reaching the roads marked "DETOUR", which were not under construction, was by driving along the newly made shoulders adjacent to said highway.

Arthur McIntyre appears to be a completely disinterested witness. He testified that he was traveling on Route No. 1 about 8:00 P.M. on the night in question; that he lived north of the place where the accident occurred; that he was accompanied by his wife and three sons, and had driven south to Hoopeston. He

testified that there was a barricade south of the bridge; that one end of the barricade was standing, and a flare was lighted some distance from it; that, as he continued in a southerly direction, he saw another barricade extending completely across the road where the new project started, and there were three or four flares illuminating it. He further testified that there was a reflectorized sign about 600 feet south on the east side of the road at the County Line Road. He also saw several flares lying near the bridge, one of which appeared to be damaged.

George R. Willett, another witness on behalf of respondent, testified that the barricade just south of the bridge was broken, and appeared to have been hit. He further testified that there was glass on the pavement about fifty to sixty feet south of the opening near the broken barricade.

The other witnesses, who testified, were employees of the Division of Highways, Department of Public Works and Buildings, and the Orr Construction Company. These witnesses corroborate the Departmental Report, in that; (1) Reflectorized signs were in place to warn northbound motorists that Route No. 1 was closed between the Vermilion-Iroquois County Line Road and Route U.S. No. 24; (2) All signs faced to the south; (3) A 42″ by 42″ sign was located on the east highway shoulder of Route No. 1, approximately 1000 feet south of Route No. 9, which bore the message "DETOUR"; (4) A 15″ by 30″ sign was located on the east highway shoulder of Route No. 1, approximately 500 feet south of Route No. 9, bearing the symbol of an arrow pointing to the west; (5) A 36″ by 36″ sign was located on the east highway shoulder of Route No. 1, approximately 500 feet south of Route

No. 9, bearing a sign "ILL. 1 CLOSED NORTH TO U.S. No. 24—DETOUR", and an arrow pointing to the west; (6) An 18" by 48" sign was located at the junction of the east highway shoulder of Route No. 1, 600 feet south of the Vermilion-Iroquois County Line Road, bearing the sign "BARRICADE AHEAD", and illuminated with two kerosene torches placed immediately in front of it. Their testimony further corroborated the Departmental Report, in that: (1) A barricade which was 36" high, and to which in the center was attached a 24" by 30" sign, marked "ROAD CLOSED", was across the entire width of the pavement on Route No. 1, in line with the north right-of-way line of the Vermilion-Iroquois County Line Road, and was illuminated by four kerosene torches placed on the pavement immediately in front of the barricade; (2) A similar barricade was erected about three-quarters of a mile north of the Vermilion-Iroquois County Line Road.

The witnesses for the Orr Construction Company testified as to the placing and lighting of the flares in the late afternoon. Other witnesses testified that they saw flares, barricades and signs on the evening of the accident in question.

Claimants and their witnesses testified, in addition to the failure of respondent to place barricades and signs of warning, that their automobile was being driven at a reasonable rate of speed; the mechanical condition of their car was good; there were no obstructions upon said highway; that it was dusk; that they were driving with the car lights on; that the road was dry, and visibility was good; and that they noticed nothing unusual, which would have warned them of the hole in the pavement where the accident occurred.

It is difficult for us to understand why they did

not see any signs of the construction work being done in and around the approach to the bridge for a reasonable distance, which should have been visible to them in time to bring their car under control, and thus enabled them to avoid striking the hole in the pavement. Furthermore, in deciding the question of contributory negligence, whether one of law or fact, we cannot ignore the Departmental Report as to the extensiveness of the construction of said highway and approaches to the bridges; the testimony of the employees of respondent and the Orr Construction Company; and, also, the testimony of the farmer, who lived north of where the accident occurred, and who testified that he drove past the scene of the accident on the night in question, and saw claimants' automobile.

Witnesses for both claimants and respondent testified as to a broken barricade in and near the place where claimants' car went into the broken pavement, and to glass lying near and in said hole. The witness, George R. Willett, who testified on behalf of respondent, stated that the barricade just south of the bridge was broken, and appeared to have been hit; and, that there was glass upon the pavement about fifty to sixty feet south of the opening near the broken barricade.

From the record, as it now stands, we are satisfied that the portion of the pavement referred to was new pavement; that the detour and warning signs, as set forth in this opinion, were still standing; that driving on the pavement, and on the shoulders, in making the detour where construction work was still in progress, was restricted to farmers living in the vicinity of said project, giving them the right of ingress and egress; and, that through traffic was properly warned to stay off of said newly constructed pavement.

It is, therefore, our opinion that if claimants ignored the signs of warning, did not follow the detour as posted, and drove on the pavement, which had not cured, and in the vicinity where the approach to the bridge was being repaired, they did so at their peril, and assumed all the risks and hazards incident thereto. The record is silent as to anything being said, or any warning or protest being offered by Inez Williams, who was riding as a passenger with her husband. Furthermore, we are of the opinion that, as to her injuries, and the injuries and property damage suffered by her husband, Ervin Williams, it was his negligence, which was the proximate cause of their personal injuries and property damage.

As previously stated, the burden of proof is upon claimants to prove by a preponderance or greater weight of the evidence that it was the negligence of respondent, which was the proximate cause of their injuries, and that they were free from any negligence whatsoever, and did not in any way contribute to their own injuries and damage. It is our opinion that claimants failed in this respect.

The award for personal injuries and property damage of Ervin Williams and Inez Williams is, therefore, denied.